**Pedro Cardona MUNIZ, et al.,
Plaintiffs, Appellants,**

v.

**NATIONAL CAN CORPORATION,
Defendant, Appellee.**

**No. 83–1640.**

United States Court of Appeals,
First Circuit.

Argued Feb. 9, 1984.

Decided June 26, 1984.

David Rive Rivera, Hato Rey, P.R., with whom Calderon, Rosa-Silva & Vargas, Hato Rey, P.R., was on brief, for plaintiffs, appellants.

Walter H. Muniz, Old San Juan, P.R., with whom Gerardo A. Carlo, Carlo & Dubos, Charles A. Cordero, Cordero, Colon & Miranda, Old San Juan, P.R., Amancio Arias Guardiola, and Arias Cestero and Arias Guardiola, Santurce, P.R., were on brief, for defendant, appellee.

Before CAMPBELL, Chief Judge, WISDOM,* Senior Circuit Judge, and BREYER, Circuit Judge.

WISDOM, Senior Circuit Judge.

The main question this consolidated appeal raises is whether a parent corporation assumed primary responsibility for industrial safety at a subsidiary corporation's plant. A second question is whether newly discovered evidence, consisting of interoffice correspondence between the two companies, proved that the parent corporation assumed responsibility for safety at the subsidiary's plant. The district court answered both questions in the negative. *Muniz v. National Can Corp.*, No. 81–0435 (TR), slip op. at 4 (D.P.R. July 14, 1983) and *Muniz v. National Can Corp.*, No. 81–0435, slip op. at 2 (D.P.R. Oct. 20, 1983). We affirm.

* Of the Fifth Circuit, sitting by designation.

## I.

Pedro Cardona Muniz brought this action against National Can Corporation (NCC) seeking damages for injuries he sustained allegedly as a result of continuous exposure to toxic lead fumes while he was employed by National Can Puerto Rico, Inc. (NCPR).[1] During the relevant time period, 1971–1974, NCC owned 80 percent of the voting stock of NCPR.[2] Although NCC was not his employer, Cardona Muniz contends that it is liable for his work-related injuries, because it was "involved" with safety measures at NCPR. NCC's involvement with industrial safety at its subsidiary corporations includes the issuance of general safety guidelines and the provision of assistance with safety matters upon request by a subsidiary's local management. Cardona Muniz maintains that NCC's involvement in safety matters at NCPR imposed an independent duty on NCC to provide a safe working environment for the plaintiff and that NCC breached this duty by failing to correct the faulty industrial safety system at NCPR.

For purposes of initial consideration in the district court, the parties agreed to bifurcate the trial.[3] The sole issue presented to the court was whether NCC had assumed responsibility for the safe working conditions at NCPR's Catano plant, where the plaintiff had been employed. The parties submitted this issue to the court on the basis of the briefs, depositions, and other documentary evidence.[4]

After considering the evidence, the district court entered judgment in favor of NCC, finding that the "duty and control [of safety matters] were primarily in the hands of N.C.P.R.'s local management [and that] ... N.C.C. had no independent duty" to provide safe working conditions at the NCPR plant. *Muniz v. National Can Corp.*, No. 81–0435 (TR), slip op. at 4 (D.P.R. July 14, 1983).

Cardona Muniz filed a motion to set aside the judgment on the basis of newly discovered evidence, consisting of interoffice memoranda. The district court found that the memoranda did not establish that NCC assumed responsibility for or control of safety measures at NCPR. *Muniz v. National Can Corp.*, No. 81–0435, slip op. at 2 (D.P.R. Oct. 20, 1983). Accordingly, the district judge denied Cardona Muniz's motion to set aside the judgment. *Id.* Cardona Muniz appeals from both judgments.

## II.

Puerto Rican law provides that "[a] person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." P.R.Laws Ann. tit. 31, § 5141 (1968). Cardona Muniz contends that NCC's failure to furnish safe working con-

---

1. Under Puerto Rican law, Cardona Muniz's sole claim against his employer, NCPR, was for workers' compensation benefits. P.R.Laws Ann. tit. 11, § 21 (1968). An injured employee, who is estopped from bringing a cause of action against a subsidiary-employer, may bring a third-party claim against the parent corporation, if the parent is a separate legal entity. *Boggs v. Blue Diamond Coal Co.*, 6 Cir., 590 F.2d 655, 661–63, *cert. denied*, 1979, 444 U.S. 836, 100 S.Ct. 71, 62 L.Ed.2d 47; *Stoddard v. Ling-Temco-Vought, Inc.*, 1980, C.D.Cal., 513 F.Supp. 314, 325.

2. The parties stipulated that NCC and NCPR maintained separate corporate existences. *Muniz v. National Can Corp.*, No. 81–0435 (TR), slip op. at 3 & 3 n. 3 (D.P.R. July 14, 1983). NCC therefore is not entitled to the shield provided by the workers' compensation scheme. *See* 2A A. Larson, The Law of Workmen's Compensation § 14–191 (1982), stating that immuni-

ty will be extended to a parent corporation for injuries to an employee of the subsidiary only when the parent so completely dominates the subsidiary-employer that the two are a single entity.

3. To facilitate the district court's consideration of the dispositive issue, the parties assumed that Cardona Muniz developed lead intoxication as a result of exposure occurring at the NCPR plant.

4. Factual determinations made by a district court solely on the basis of documentary evidence are reversible only if they are clearly erroneous. *Bose Corp. v. Consumers Union of United States, Inc.*, — U.S. —, —, 104 S.Ct. 1949, 1958, 80 L.Ed.2d 502 (1984); *Keebler Co. v. Rovira Biscuit Corp.*, 1 Cir.1980, 624 F.2d 366, 377; *Constructora Maza, Inc. v. Banco de Ponce*, 1 Cir.1980, 616 F.2d 573, 576; *Leach v. Crucible Center Co.*, 1 Cir.1968, 388 F.2d 176, 179.

ditions caused his injury. Failure to perform an act gives rise to a cause of action only when there is a legal duty to act. *Torres v. United States*, 1 Cir.1980, 621 F.2d 30 (applying Puerto Rican law); *Estremera v. Immobiliaria Rac Inc.*, 1980, 109 P.R.Dec. 852. We must determine whether in the circumstances of this case NCC had a legal duty to provide the plaintiff with safe working conditions at the NCPR plant.

■ An employer has a nondelegable duty to provide for the safety of its employees in the work environment. *See Love v. Flour Mills of America*, 10 Cir. 1981, 647 F.2d 1058, 1063. The parent-shareholder is not responsible for the working conditions of its subsidiary's employees merely on the basis of parent-subsidiary relationship.[5] *Id.; see also Heinrich v. Goodyear Tire & Rubber Co.*, 1982, D.Md., 532 F.Supp. 1348, 1354–56; *Rick v. RLC Corp.*, 1981, E.D.Mich., 535 F.Supp. 39, 42–43. A parent corporation may be liable for unsafe conditions at a subsidiary only if it assumes a duty to act by affirmatively undertaking to provide a safe working environment at the subsidiary.[6] *Love v. Flour Mills of America*, 10 Cir.1981, 647 F.2d 1058, 1063; *see also* Treece & Zuckerman, *A Parent Corporation's Liability for the Torts of its Subsidiary in the Context of Exclusive Remedy Provision of the Workers' Compensation Laws*, 50 Ins. Counsel J. 609, 613–15 (1983).

■ Such an undertaking may be express, as by contract between the parent and the subsidiary[7], or it may be implicit in the conduct of the parent.[8] Cardona Muniz does not allege that NCC had an express contract with NCPR to provide for industrial safety. Rather, he contends that NCC assumed such a responsibility through its conduct. After examining the record, we agree with the district court that the evidence showed that NCC was concerned with safety conditions at NCPR and that NCC had communicated with NCPR on safety matters, but that the evidence did not establish that NCC had a duty to the plaintiff in this case. *See Muniz v. National Can Corp.*, No. 81–0435 (TR), slip op. at 4 (D.P.R. July 14, 1983).

Because an employer has a nondelegable duty to provide safe working conditions for its employees, we do not lightly assume that a parent corporation has agreed to accept this responsibility. Neither mere concern with nor minimal contact about safety matters creates a duty to ensure a safe working environment for the employees of a subsidiary corporation. To establish such a duty, the subsidiary's employee must show some proof of a positive undertaking by the parent corporation. This Court has not considered the extent of involvement necessary to imply a duty by the parent corporation to the employees of its subsidiary.[9] Several courts, however, have addressed this issue under the standard outlined in the Restatement (Second) of

---

**5.** In refusing to premise liability solely on the basis of a parent-subsidiary relationship, the Tenth Circuit reasoned that imposing liability on such a basis would treat the parent-shareholder as an employer without providing it with the shield of employer immunity under workers' compensation laws. *Love v. Flour Mills of America*, 10 Cir.1981, 647 F.2d 1058, 1063.

**6.** "One who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all." *Glanzer v. Shepard*, 1922, 233 N.Y. 236, 135 N.E. 275, 276 (Cardozo, J.).

**7.** *See, e.g., Heinrich v. Goodyear Tire & Rubber Co.*, 1982, D.Md., 532 F.Supp. 1348, 1354 & 1354 n. 13, in which the evidence showed that the parent corporation had affirmatively under-

taken by contract and by conduct to provide health and safety services to the subsidiary.

**8.** *Cf. Rick v. RLC Corp.*, 1981, E.D.Mich., 535 F.Supp. 39, 43.

**9.** The plaintiffs maintain that this Court decided the question presented by this case in *Mangual v. General Battery Corp.*, 1 Cir.1983, 710 F.2d 15. That case, however, is inapposite to the case at bar. In *Mangual*, we held that the district court had jurisdiction over a non-resident parent corporation based on the alleged tortious acts of its agents within the jurisdiction. We expressed no opinion on the merits of *Mangual*. *Id.* at 20 n. 5 & 21 n. 6. In the present case, however, jurisdiction is conceded. The issue before us is one of ultimate liability.

Torts.[10] We find their reasoning helpful to our determination.

In *Davis v. Liberty Mutual Insurance Co.*, 5 Cir.1976, 525 F.2d 1204, the court considered whether an insurer assumed the duty of its insured to discover and correct unsafe condition at the insured's plant. The evidence showed that the insurer provided recommendations to aid the insured in fulfilling its duty to provide a safe place to work and that the insurer occasionally assisted in safety inspections at the insured's plant. The court held, however, that the insurer had not assumed a duty to provide for safety at the insured's plant, because the insured did not delegate any part of its direct and primary duty to discover unsafe conditions to the insurer. *Id.* at 1208.

■ Other courts have held that the evidence must show more than an incidental rendering of service by a parent corporation to establish a duty for the safe operations of a subsidiary. *See, e.g., Rick v. RLC Corp.*, 1981, E.D.Mich., 535 F.Supp. 39, 45. The plaintiff must establish either that the parent agreed to provide the service or that the parent intended to confer benefits, either for a fee or gratuitously, on the subsidiary. A duty is not proved by conduct consistent with an intention solely or primarily to serve the parent's own purposes. *Id.*

There is no evidence in this case that NCC assumed responsibility for safety at NCPR. Nor does the evidence show that NCPR relied on NCC for this purpose by lessening or omitting its own safety measures. *See Heinrich v. Goodyear Tire & Rubber Co.*, 1982, D.Md., 532 F.Supp. 1348, 1356. Rather, the evidence shows that NCC provided general safety guidelines, not specifically directed to the concentration of lead in the workplace,[11] and that NCC intended for these general guidelines to be implemented by local management.[12] Based on this evidence, we find that the district court's holding that NCC had no duty to the plaintiff is not clearly erroneous.

### III.

■ Nor do we find that the district court erred in denying the plaintiff's motion to set aside the judgment based on newly discovered evidence. This evidence consisted of two memoranda from the president of NCPR to an officer at NCC regarding the correction of OSHA violations at NCPR and a memorandum concerning the need for new equipment at NCPR. These documents reinforce the district court's finding that NCC was concerned with operations at NCPR and was in contact with its officers. None of the documents evidence an agreement between NCC and NCPR showing that NCC assumed a duty for safe operations at NCPR. Nor do they provide evidence of conduct that would imply such a duty. Accordingly, we find that the district court properly denied the motion to set aside the judgment based on this evidence.

---

10. "One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
    (a) his failure to exercise reasonable care increases the risk of such harm, or
    (b) he has undertaken to perform a duty owed by the other to the third person, or
    (c) the harm is suffered because of reliance of the other or the third person upon the undertaking."
Restatement (Second) of Torts § 321A (1965).

11. *Compare Muniz v. National Can Corp. with Heinrich v. Goodyear Tire & Rubber Co.*, 1982, D.Md., 532 F.Supp. 1348, 1354, in which the parent provided direct guidance on the use of the chemicals that caused the plaintiff's injury.

12. *See* NCC Industrial Relations Standard Practice Manual, *reprinted in* 1 Record.
    "All members of management must
    . . . . .
    b. provide safety tools and devices, material, and job procedures to enable their employees to work with maximum effectiveness in a safe manner and atmosphere
    . . . . .
    e. maintain safe conditions in those areas under their jurisdiction."

Because NCC did not have a duty to the plaintiff to provide safe working conditions at NCPR, NCC cannot be held liable for the plaintiff's injuries. The judgment of the district court is AFFIRMED.