Armando MÉNDEZ–LABOY, et
al., Plaintiffs, Appellants,

v.

ABBOTT LABORATORIES, INC.,
Defendant, Appellee.

No. 04–2687.

United States Court of Appeals,
First Circuit.

Heard June 10, 2005.

Decided Sept. 15, 2005.

Eric M. Quetglas–Jordán, with whom Quetglas Law Offices, was on brief, for appellants.

Iván M. Fernández, with whom Iván M. Fernández Law Offices, was on brief, for appellee.

Before TORRUELLA, LIPEZ and HOWARD, Circuit Judges.

TORRUELLA, Circuit Judge.

These consolidated cases arise pursuant to our diversity jurisdiction, 28 U.S.C. § 1332, as a result of an industrial accident suffered by appellants Armando Méndez–Laboy ("Méndez") and Gilberto Olavarría–Carrillo ("Olavarría"). The casualty occurred on March 14, 1997 at a pharmaceutical manufacturing plant owned and operated by Abbott Health Products, Inc. ("API"), in Barceloneta, Puerto Rico, where appellants were employed as coating operators.

On March 3, 1998, appellants and their respective spouses filed separate actions (later consolidated into the present one) against API's parent company, Abbott Laboratories, Inc. ("Abbott"), in the U.S. District Court for Puerto Rico, essentially alleging an action sounding in tort pursuant to Article 1802 of Puerto Rico's Civil Code. 31 P.R. Laws Ann. § 5141. The accident was also the subject of similar suits filed in the Court of First Instance of Puerto Rico (that system's trial court) shortly thereafter on March 9, 1998, against API, Abbott Pharmaceutical, Inc. ("AP"), and Abbott Chemical, Inc. ("AC"). The Puerto Rico trial judges in both cases refused to dismiss the cases upon defendants' motions, but these decisions were reversed in a consolidated interlocutory appeal to the Puerto Rico Circuit Court of Appeals, which held that the actions arose from a work accident covered by Puerto Rico's Workmen's Compensation Act, 11 P.R. Laws Ann. §§ 1 *et seq.* ("Act"), whereby the employer, API, was immune from suit for the resulting damages. *Id.* § 21.

The facts regarding the accident itself are not in dispute. On the day in question, Méndez and Olavarría were preparing a color solution in API's coating area, by adding hydrooxypol methyl cellulose phthalate that was in a polyethylane bag, into a tank that had a water-based mixture of acetone and methanol. Unfortunately, static energy generated by the plastic bag caused a spark, which in turn ignited the flammable vapors, which together with the oxygen in the area, produced an explosion. The explosion caused severe burns to Méndez and Olavarría throughout their bodies, faces, and extremities. Thereafter, both employees received medical treatment, as well as accident compensation benefits, in accordance with provisions of the Puerto Rico Workmen's Compensation Fund.

It is uncontested that appellee Abbott is neither Méndez's nor Olavarría's employer. Their action against Abbott is premised on the theory that Abbott is a "responsible third party" under the Act:

[W]here the injury ... entitling the workman or employee or his beneficiaries to compensation in accordance with this chapter has been caused under circumstances making a third party responsible for such injury, disease, or death, the injured workman or employee or his beneficiaries may claim and recover damages from the third party responsible for said injury....

11 P.R. Laws Ann. § 32.

Appellants contended that Abbott caused the dangerous condition that led to

their injury, that it owed them a duty in this respect, and that Abbott's failure to meet this duty makes them liable in damages under Article 1802 of the Civil Code. 31 P.R. Laws Ann. § 5141. Abbott responded by filing a motion for summary judgment claiming the protection of API's immunity under the Act, an allegation agreed with by the district court. *Méndez–Laboy v. Abbott Labs.*, No. 98–1223, 98–1227 (D.P.R. May 7, 2004). This appeal followed.

The standard of review for entries of summary judgment is, of course, *de novo*. *See, e.g., Tum v. Barber Foods, Inc.*, 360 F.3d 274, 279 (1st Cir.2004). We conclude that the district court reached the correct result, and thus we affirm.

■ Under the "third party" theory, an action for breach of a duty of care by a subsidiary against the parent company is available only if the employee can establish that the parent company assumed, either by express agreement or by implication, the "primary responsibility" for providing industrial safety in the subsidiary. *See Muñiz v. National Can Corp.*, 737 F.2d 145, 148 (1st Cir.1984). Once the moving party in a motion for summary judgment has established that there is an absence of material facts in dispute, and that the law applicable to those facts sustains the granting of that remedy, the "party opposing summary judgment must 'present definite, competent evidence to rebut the motion,' " or the district court is obligated to grant the motion in favor of the moving party. *Maldonado–Denis v. Castillo–Rodríguez*, 23 F.3d 576, 581 (1st Cir.1994) (citing *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir.1991)).

As we stated in *Muñiz*:

The parent-shareholder is not responsible for the working conditions of its subsidiary's employees merely on the basis of parent-subsidiary relationship.

A parent corporation may be liable for unsafe conditions at a subsidiary only if it assumes a duty to act by affirmatively undertaking to provide a safe working environment at the subsidiary.

. . .

■ Neither mere concern with nor minimal contact about safety matters creates a duty to ensure a safe working environment for the employees of a subsidiary corporation.

*Muñiz*, 737 F.2d at 148 (citations omitted). The employee bears the burden of presenting specific facts to show either an express contract establishing such a duty, or specific acts by the parent company showing that it has assumed such an undertaking. *Id.* The affidavits and documents submitted by Abbott establish that API's Management Team was in charge of safety and supervision of the manufacturing procedures in which appellants were engaged when the explosion occurred. The closest that appellants come to rebutting this evidence is the presentation of evidence that, after the accident, Abbott personnel expressed concern about the accident and about steps that should be taken to prevent a recurrence, through the interchange of various communications between the two companies. The district court concluded, and we agree, that such transient and superficial actions were insufficient to establish a minimal modicum of control or direction over safety procedures and matters by the parent company over the subsidiary.

Appellants argue that Abbott, as a third-party supplier of a tightly-controlled manufacturing process, is liable in tort for injuries incurred in executing that process. In effect, appellants claim that since Abbott designed the manufacturing process in which appellants were engaged when

the accident occurred—and which they claim could not be changed by API without approval by Abbott—Abbott had a duty towards API employees that the process be safe.

In support of its motion, Abbott filed an affidavit by the API plant manager indicating that the manufacturing processes engaged in by appellants when the accident occurred were directed and supervised by the API Management Team, which was composed of the plant manager, the production manager, the manufacturing section manager, the engineering and maintenance manager, the safety and health section manager, the supervisor, and the coordinator. These were all employees of API, not Abbott. None of the Abbott employees worked in Puerto Rico to provide a safe work environment there, those functions being the responsibility of the API management team. That team had the "control and implementation" for providing a safe workplace to appellants. Although Abbott provided safety and hygiene guidance to this plant, in the same way that it does for all plants throughout the United States, each local management team is responsible for providing a safe workplace to employees working in the plant. API never delegated these duties to Abbott, either orally or in writing. An internal memorandum of API, signed and approved by API's Management Team, explains the procedure to be followed in the manufacture of the coating solution, as well as the safety measures to be taken during the manufacturing process.

The evidence before the district court clearly supported its conclusion that this was an industrial accident, the circumstances of which were under the control and supervision of API's personnel. The district court thus found, and we agree, that even assuming the existence of a separate cause of action for designing a faulty manufacturing process, appellants have failed to establish that Abbott actively undertook the responsibility of ensuring safety in this particular manufacturing procedure. Although the district court did not base its holding on this point, it would also seem that, considering the lack of evidence of Abbott's direct supervision of the API daily manufacturing process, any negligence in the design of that process by Abbott would have been negated or superceded by API's intervening negligence, which would have been the proximate cause of the accident. *See Malavé-Félix v. Volvo Car Corp.*, 946 F.2d 967, 971–72 (1st Cir.1991).

For the reasons expressed herein, the district court's entry of summary judgment for Abbott is affirmed.

*Affirmed.*